Nelson, Ch. J. dissenting.
The attorney’s power was limited, in express terms, to the business of the principal; and the use of his name for the benefit of D. Rogers & Son was without authority, and therefore void. The plaintiffs are, moreover, to be deemed cognizant of the special limitation contained in the letter of attorney, for it was deposited with them and remained in their possession down to the time of discounting the notes in question ; and even without this, as the notes were signed *276 by an attorney, it was their duty to enquire into his authority. Being thus advised, the plaintiffs must be regarded as having discounted the paper under the hazard of showing, before they can charge Pexcel Fowler or his representatives, that it was made and negotiated by the agent within the precise limit of his authority; and they were therefore properly required to prove that the notes were given in the business of the principal. Having failed to do this, I am of opinion that the direction of the court below was right.
It is insisted the bank was not bound to enquire further than to ascertain that the attorney was empowered to make and endorse notes for his principal. But the same instrument which conferred this power, also contained the special limitation, and it was therefore as material for them to bring the case within that, as within any other part of the authority. The one qualified the other, and both must be regarded in ascertaining the sum. of the whole. Mr. Lloyd, in his valuable edition of Paley on Agency, (p. 192, 3d ed.) observes, that all written powers, such as letters of attorney, or letters of instruction, receive a strict interpretation ; the authority never being extended beyond that which is given in terms, or is absolutely necessary for carrying the authority so given into effect. He refers to Atwood v. Munnings, (7 Barn. Cress. 278,) which, in principle, is decisive in favcr of the judgment of the court below. There, the power was given to the wife of the defendant, “ for him and on his behalf to pay and accept such bill or bills of exchange as should be drawn or charged on him by his agents, &c., and generally to do, negotiate and transact the affairs and business of him (Munnings) during his absence,” &c. She accepted four bills drawn by one of the partners of Munnings, the proceeds of which were applied in payment of partnership debts. Another bill was afterwards drawn in order to raise money to take up the former ones, which was accepted by Munning’s wife and discounted by the plaintiffs. The question was, whether the wife had authority to bind her husband by the acceptance. The titiurt of K. B. held that she had not j *277 that as the bill was accepted by procuration, the party taking it should, in the exercise of a reasonable prudence and caution, have required the production of the power, when he would have seen that it only gave authority to accept bills for the defendant and on his behalf; that no such power was requisite as to the partnership transactions, for the other partners might have bound him by their acceptance ; and that the words must be confined to their obvious meaning, viz. an authority to accept in those cases where it was right for him to accept in his individual capacity. (See also Story on Agency, pp. 64, 65, 66.)
In the present case, the notes were discounted by the plaintiffs in the business and for the benefit of D. Rogers & Son— a transaction clearly not within the power. But it is insisted, the plaintiffs had a right to assume that the notes were made in the course of the business of Pexcel Fowler, and, therefore, within the authority of the attorney; or if not, that the plaintiffs were at least justified in relying upon the implied representations of the agent that they were notes of this description, as evinced by his act in making and putting them in circulation. I cannot assent to either of these propositions.
The plaintiffs having the letter of attorney before them are chargeable with notice of the limitations contained in it. They knew, therefore, that the agent had authority to make and endorse the paper only while acting in the business of his principal ; and that if done for the benefit of D. Rogers & Son, or in the business and for the benefit of others, Pexcel Fowler would not be bound. This the plaintiffs saw upon the face of the power ; and it was their own folly, therefore, if they took the notes without first enquiring into the circumstances under which they were made, or neglected to ascertain the truth of the transaction between the attorney and D. Rogers & Son by means of which the paper came into their hands. Had the plaintiffs gone into the enquiry in respect to which they were thus admonished by the terms of the power, they would have learned a,t once that the attorney had far exceeded his author! *278 ty, and that he, together with D. Rogers & Son, were engaged in the perpetration of a gross fraud upon the principal. To say that the plaintiffs are bonajide holders, and that their title to the paper is therefore to be protected because they were in point of fact ignorant of the fraud of the attorney, is but saying that •- a party may acquire rights by his own remissness and neglect-may wilfully shut his eyes and ears against the truth when spread before him, and insist in a court of justice that he had no knowledge of its existence. Being admonished of the special limitation of authority, it behoved all parties dealing with the paper, at their peril, to enquire and ascertain whether or not the notes were made within it; and as no one was bound to take them until he was satisfied of this fact, there is no hardship in holding the plaintiffs to the proof of it.
It is said, however, that the attorney, by' making and putting the notes into circulation, virtually affirmed they were made in the course of the business of his principal, and hence within the scope of the power. But, is it possible that the ^ agent, by his own acts or declarations, can enlarge the power beyond that defined and limited in his letter of instructions I that he can thus virtually make himself a general, instead of a special agent, in despite of his principal ? Are not all persons dealing with him, bound to look to the letter of instructions—to the written authority conferred—for the purpose of determinining the extent of it 1 The argument goes- the unreasonable length of saying, in effect, that however distinct may be the limitation of authority, still no person dealing with the agent is bound thereby, provided his acts be of such a description as might possibly come within it; that the party dealing wdth him is not bound to enquire and ascertain if the agent is in fact acting within the limitation, but shall be protected if it be simply shown that he appears to be so acting, whatever the \ fact may be. That is, if the principal has empowered him to make and endorse notes in the course of transacting his business, the agent may make and endorse them in the business of any one •; that he may do this for the purpose of paying the- *279 debts of his (the agent’s) bankrupt house, or may loan the securities for the benefit and accommodation of his bankrupt neighbors. I admit, that not only the acts, but the declara- X tions and representations of the agent, are binding upon the principal while acting within the scope of his authority ; but I cannot agree that either can enlarge or add to the authority. ,
I am of opinion, therefore, that the judgment below is correct ; but as a majority of the court are of a different opinion, the judgment must be reversed.
Judgment reversed.